UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARIANE B. PAICE,

                              Plaintiff,

   -v-                                                    5:11-CV-760

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street, Suite 520
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL    REBECCA H. ESTELLE, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II  KAREN G. FISZER, ESQ.
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      This matter is brought pursuant to §§ 205(g) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability benefits. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II.  BACKGROUND

Plaintiff Mariane B. Paice ("plaintiff" or "Paice") filed an application for social security disability benefits on May 4, 2005, claiming a period of disability beginning on October 22, 2002.  Her claims were denied on March 26, 2007, after a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appealed the ALJ's decision, and the Appeals Council declined further review.  Paice filed an appeal, and the court remanded the matter for further administrative action pursuant to sentence four of 42 U.S.C. § 405(g).  A new hearing was held on October 29, 2009, adjourned, and continued on May 7, 2010.  The ALJ denied plaintiff's claim on May 21, 2010.  On May 4, 2011, the Appeals Council denied review.  Thus, the ALJ's decision became the final decision of the Commissioner.

## III.  STANDARDS

### A.  Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which

detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148. "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)). A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)). Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing." Id. at 644. However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the

district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

### B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform

basic work activities.  Id. §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations.  Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of proof with regard to the first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and  final step.  Perez, 77 F.3d at 46.  This step requires the agency to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary."  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council.  Perez, 77 F.3d at 44.  If review is granted, the decision of the Appeals Council is

the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

## IV. DISCUSSION

Paice first argues that the ALJ erred at Step 2 of his analysis in not finding that her Chronic Obstructive Pulmonary Disease ("COPD") and depression were severe impairments. Second, she contends that the ALJ made a legal error in determining her RFC and therefore the RFC finding was not supported by substantial evidence. Third, according to plaintiff, the ALJ erred in assessing her credibility. Finally, she argues that these errors at Step 2 resulted in an incomplete hypothetical being given to the Vocational Expert ("VE") at Step 5.

### A. Severity of COPD and Depression

"An impairment or combination of impairments is not severe if it does not significantly limit one's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as, inter alia, walking, lifting, understanding and following simple instructions, using judgment, responding appropriately to other people and situations at work, and handling changes in the work setting. Id. § 404.1521(b).

### 1. COPD

Plaintiff takes issue with the ALJ's statement that "there is insufficient documentation to show that" her COPD was a severe impairment. In support of her argument, Paice points to several places in the record purportedly documenting her COPD. On May 9, 2002, Dr. Bruce Silverstein, plaintiff's treating physician, diagnosed her with COPD after observing bilateral wheezing. R. at 129–30. However, there is nothing in this progress note that indicates any resulting limitation. See id. The Oswego Hospital emergency room ("ER")

record from February 5, 2008, notes that she was "wheezing throughout." R. at 464. Again, nothing in the ER notes indicates any limitation resulting from her wheezing. See id. at 454–76. Further, plaintiff fails to point out that the primary reason for the February 2008 ER visit was heart palpitations, resulting in a diagnosis of supraventricular tachycardia. Id. at 456–57. The record also reflects that Paice continued to smoke 1-1/2 packs of cigarettes per day, consistent with the indication of "asthma exacerbation" diagnosis. See id. at 456–58; see also id. at 121 (December 10, 2002: asthmatic bronchitis; smokes 1-1/2 packs per day); 166 (October 17, 2005: cough, sinus pressure, continues to smoke); 218 (November 3, 2004: asthma attack, directed to quit smoking); (May 22, 2006: history of chronic sinusitis, smokes 1-1/2 packs per day). Finally, regarding the ER visit of February 5, 2008, it was recommended that plaintiff remain in the hospital overnight for observation, but she refused. Id. at 457.

According to Paice, Dr. Fuleihan diagnosed her with shortness of breath associated with COPD. Pl.'s Mem. at 12. Dr. Fuleihan did note the impression that plaintiff had shortness of breath with effort, typically walking. Id. at 510. He also noted her obesity and counseled her about the overall effects on her health, the importance of exercise, and the need to reduce her weight. Id. He referred her to a dietitian, id., but there is no indication in the record that she followed up with that referral. Further, on physical examination he found her lungs to be clear, respirations even, and breathing not labored. Id. at 509. Dr. Fuleihan did not indicate that Paice had any limitations due to her COPD. Similarly, the few other portions of the record to which she points in support of COPD being a severe impairment, while noting her wheezing or asthma exacerbation, do not opine that she is restricted in any way due to COPD.

Plaintiff cites Dr. Falkove's opinion that she has environmental restrictions due to asthma and COPD. Id. at 713. Dr. Falkove reviewed plaintiff's records and completed a Medical Interrogatory on March 9, 2010, at the request of the Social Security Administration. As plaintiff points out, he noted environmental restrictions due to asthma and COPD as well as lifting/carrying restrictions. Id. However, he did not opine as to what the restrictions should be. See id. at 711–14. Additionally, in a Medical Source Statement dated August 27, 2009, Paice's treating physician Dr. Silverstein opined that she could tolerate exposure to dust, odors, fumes, and pulmonary irritants frequently Id. at 545.

The ALJ's finding that plaintiff's COPD was not a severe impairment is supported by substantial evidence.

### 2. Depression

Paice also contends that the ALJ should have found her depression to be a severe impairment. She argues that the ALJ gave too little weight to her treating physician Dr. Silverstein, while giving too much weight to the consultative psychiatrist Dr. Kevin Duffy. Dr. Silverstein diagnosed plaintiff with depression on November 19, 2003, and gave her medication. Id. at 115. However, at a pre-operative physical on March 30, 2004, she was no longer taking the medication and was feeling well. Id. at 199. Dr. Silverstein found normal psychological orientation. Id. On May 9, 2005, after her alleged onset date of October 22, 2002, and her last insured date of December 31, 2004, she again complained of depression and anxiety for several months (not years). Id. at 103. Dr. Silverstein again prescribed medication. By October 17, 2005, she was no longer taking the medication for depression. See id. at 166. None of Dr. Silverstein's progress notes support his opinion that plaintiff essentially could do no work because of mental limitations. Id. at 180–81; see id. at

- 8 -

100–188,548–85. Thus, the ALJ properly discounted Dr. Silverstein's opinion as to her mental limitation.

Further, Dr. Silverstein is a family doctor, whereas Dr. Duffy is a psychiatrist. Dr. Duffy found that Paice had a depressive disorder but that it would not limit her ability to work. Id. at 435–42. Notably there is no other record from any counselor, psychologist, or psychiatrist, indicating plaintiff's complete failure to seek treatment for her alleged depression other than on occasion to request anti-depressants from her family doctor. The ALJ properly found that plaintiff's depression was not a severe impairment.

### B. RFC

Paice argues that the ALJ erred in giving great weight to Dr. Falkove, significant weight to Dr. Sirotenko, and little weight to Dr. Silverstein. She further argues that the ALJ did not follow the proper legal standard in that he did not give Dr. Silverstein controlling weight. Whether Dr. Silverstein's opinions should have been given controlling weight would affect plaintiff's other arguments; therefore, it is addressed first.

#### 1. Controlling weight to treating physician's opinion

Where "a treating source's opinion of the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in" the record, it will be given controlling weight. 20 C.F.R. § 404.1527(c)(2).

In a Medical Source Statement dated November 28, 2006, Dr. Silverstein opined that plaintiff could only sit or stand 10–15 minutes at one time, that she must walk every 15 minutes for 5 minutes, and she must be able to shift positions at will. R. at 178. He opined that she could rarely lift less than ten pounds and never lift more than ten pounds. Id.

According to Dr. Silverstein, Paice could rarely look up or down, turn head right or left, and hold head in a static position and she could never twist, stoop, crouch/squat, climb ladders, and climb stairs.  Id. at 179.  His progress notes indicate low back and joint pain but in no way reflect the severity of restrictions the pain would cause, or even the level of pain (such as on a scale of 1 to 10) from which plaintiff was suffering.  See, e.g., id. at 135, 119, 108.  Many of the progress notes do not even mention low back pain or musculoskeletal findings.  See, e.g., id. at 131–32, 129–30, 126, 123–24, 117, 115.  Thus, Dr. Silverstein's opinion as to Paice's exertional limitations was inconsistent with his treatment notes.

Moreover, Paice's own testimony about her daily activities was inconsistent with Dr. Silverstein's opinion.  She testified that she puts laundry in the washer, has help with transferring it to the dryer, then folds the clothes once they are dry.  Id. at 744.  She does dishes two or three times a week, and vacuums once a week.  Id.  She shares meal preparation with her brother.  Id.  If she does weeding in the garden, she sits on the ground and scoots.  Id.  She drives herself to doctors, the grocery store, and the bank, averaging about fifty to seventy-five mile per week.  Id. at 745.  She takes care of her own personal hygiene.  Id.  Paice testified that she could lift and carry ten or fifteen pounds occasionally.  Id. at 746.

Additionally, other evidence in the record is inconsistent with Dr. Silverstein's opinion.  For example, Dr. Aziz, a neurology consultant, found on May 22, 2006, that plaintiff had "[n]o significant back pain, joint pain, joint swelling, stiffness or limited range of motion" and full range of motion of the neck.  Id. at 232.  On August 15, 2006, he observed that Paice had "[n]o significant back pain, joint pain, joint swelling, stiffness or limited range of motion".  Id. at 229.  Dr. George Sirotenko performed an orthopedic consultative examination on July 31,

2009. He found full flexion and extension of the cervical spine as well as full lateral flexion bilaterally and full rotatory movement bilaterally. Id. at 445. He noted no neck pain or spasm. Id. As for the lumbar spine, he noted some restrictions in flexion, extension, and rotation. Id. However, Dr. Sirotenko reflected those restrictions in his opinion as to plaintiff's physical ability to do work-related activities, such as the ability to continuously lift and carry up to ten pounds, but to only frequently lift and carry eleven to twenty pounds. Id. at 447.

Dr. Silverstein's opinion of the nature and severity of plaintiff's impairment, and the extent to which it limited her ability to perform work, was inconsistent with the other substantial evidence in the record. Accordingly, the ALJ followed the correct legal standard in determining that the treating physician's opinion should not be given controlling weight.

### 2. Weight given to medical sources

Where the treating physician's opinion is not given controlling weight, the weight it and the opinions of the other medical sources are given is determined by consideration of the following factors:   length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability, especially by medical signs and laboratory findings; consistency with the record as a whole; specialization; and other factors pointed out by the plaintiff. 20 C.F.R. § 404.1527(c). However, where the treating physician's opinion is not supported "'by medically acceptable clinical and laboratory diagnostic techniques and is [] inconsistent with the other substantial evidence in [the] case record,'" it is not entitled to significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)).

As discussed above, Dr. Silverstein's opinion was inconsistent with other substantial evidence in the record. Therefore, his opinion is not entitled to significant weight.

- 11 -

Plaintiff argues that the ALJ gave improper weight to Dr. Falkove and Dr. Sirotenko. The ALJ gave great weight to Dr. Falkove and considerable weight to the consultative examiners, one of whom was Dr. Sirotenko. Dr. Falkove did not examine plaintiff, but he reviewed all of her medical records on March 9, 2010, before giving his opinion. See R. at 211-14. Further, his opinion was consistent with the record as a whole, including the progress notes (although not the medical source statements) of treating physician Dr. Silverstein. Therefore, the ALJ did not err in giving Dr. Falkove's opinion great weight.

Dr. Sirotenko performed a consultative orthopedic examination on July 31, 2009. Id. at 443–53. Upon physical examination, Dr. Sirotenko found full flexion, extension, and lateral flexion of plaintiff's neck. Id. at 445. He found some limited flexion and extension of her thoracic and lumbar spine, as well as some joint tenderness. Id. His medical source statement of "mild limitations regarding repetitive forward flexion, extension and rotation on a repetitive basis" and "avoid lifting objects greater than a moderate degree of weight on an intermittent basis over her head to prevent axial load" were well supported by his findings on examination, as well as with the record as a whole. It was not error to give his opinion considerable weight.

Dr. Silverstein had the longest treating relationship with Paice, from 2002 through 2009. Other than emergent care, the other physicians who treated her were referred by him, and the treatment relationship was short. See, e.g., id. at 229–36 (consulting neurologist Dr. Aziz, for dizziness, from May to August 2006). Plaintiff argues that Dr. Silverstein's opinion should have been given more weight; however, as determined above his opinions given on the medical source statements are not entitled to controlling, or even significant, weight. Given the lack of any treating specialists or any other treating sources, and Paice's failure to

point to any source other than Dr. Silverstein whose opinion should have been weighed more heavily than Drs. Falkove and Sirtenko, the ALJ properly weighed the opinions of the medical sources of record according to the factors set forth in 20 C.F.R. § 404.1527(c).

### C. Assessment of Plaintiff's Credibility

Paice argues that the ALJ applied an inappropriate legal standard in assessing her credibility because of his statement that her "statements concerning the intensity, persistence and limiting effects of her symptoms 'are only partially credible to the extent they are *inconsistent with the above residual functional capacity assessment*.'" Pl.'s Mem. at 21 (quoting R. at 308, adding emphasis). According to her, the proper legal standard is to consider the entire record. It is clear from the ALJ's decision that he applied the proper legal standard and considered the entire record. He stated that he considered all of Paice's symptoms and the other evidence. R. at 305. He reiterated what she claimed as her restrictions and the inconsistency both internally, that is, between her claims of limitations and her admitted daily activities, and with the medical evidence.

As to the medical evidence, again plaintiff relies upon Dr. Silverstein's opinion that she had a total disability. Medical source opinions such as this which concern issues reserved to the Commissioner (such as that claimant "is disabled" or "cannot work") are not entitled to any weight. 20 C.F.R. § 416.927(d)(1). Moreover, as discussed in detail above, Dr. Silverstein's opinion of plaintiff's total disability is inconsistent with his own progress notes and with the record as a whole.

In sum, the ALJ gave full consideration to both plaintiff's self-declared limitations and all of the objective evidence in the record in accordance with the proper legal standard. See id. at 306–09.

### D. Vocational Expert Hypothetical

Paice's final argument is that the VE's testimony cannot provide substantial evidence in support of the ALJ's opinion because it was based on an incomplete hypothetical question. She claims three reasons that the hypothetical question posed to the VE was incomplete: (1) error in the Step 2 analysis in finding her COPD and depression were not severe; (2) an RFC based on incorrect legal standard and therefore not supported by substantial evidence; and (3) errors in assessing credibility. As set forth above, the ALJ made no error in the Step 2 analysis, he followed the correct legal standard in determining Paice's RFC, and he properly weighed her credibility. Therefore, the hypothetical question to the VE was complete.

## IV. CONCLUSION

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 18, 2013
       Utica, New York.